**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Danishek, *et al.*, | No. CV-23-08131-PCT-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Several motions are at issue. First, Defendant United States of America filed a Motion for Summary Judgment (Doc. 90, MSJ), to which *pro se* Plaintiffs filed a Response (Doc. 95, Response) and Defendant filed a Reply (Doc. 98, Reply). Plaintiffs also filed a sur-reply (Doc. 100), which Defendant moved to strike (Doc. 101). Plaintiffs have conceded the propriety of this motion to strike. (*See* Doc. 104.) Accordingly, the Court will strike Plaintiffs' sur-reply and disregard the contents thereof. Plaintiffs also filed a Motion to Supplement Discovery (Doc. 102), which Defendant characterizes as a pretextual attempt to refile their sur-reply under a different name. Therefore, Defendant filed a second Motion to Strike (Doc. 103), to which Plaintiffs filed a Response (Doc. 105.) The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

**I.   Background**

Except as noted below, the facts of this case are undisputed. Plaintiffs were visitors to the Forestglen Trailhead of the Wickiup Mesa Trail System in the Coconino National Forest in Arizona, which is owned and managed by Defendant through the United States

1  Forest Service. While maneuvering their vehicle in the trailhead parking lot, Plaintiffs
2  inadvertently drove into a "corner monument" that was obscured by vegetation. The corner
3  monument is a metal, cylindrical survey marker with a diameter of approximately two
4  inches and an above-ground height of approximately one foot. At the time of the accident,
5  no sign or other warning device alerted visitors of the corner monument's existence.
6  Plaintiffs allege that their collision with the corner monument resulted in $2666.68 in
7  damages. Plaintiffs brought suit against Defendant under the Federal Tort Claims Act
8  (FTCA). Specifically, Plaintiffs assert that Defendant's failure to warn of the corner
9  monument's existence constitutes gross negligence. (Doc. 52, FAC at 15.) The basis of
10 Plaintiffs' claim is that Defendant allegedly failed to follow its own regulations governing
11 the maintenance of boundary markers such as the corner monument at issue here.
12 Defendant has moved for summary judgment on two separate grounds.

**II.    Legal Standard**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show

that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

### III. Discussion

Defendant's primary argument for summary judgment is that the FTCA's discretionary function exception bars Plaintiffs' lawsuit. Defendant's secondary argument is that Arizona's recreational use statute precludes tort liability on these facts. The Court examines each legal theory in turn.

#### A. The Discretionary Function Exception

The FTCA, which constitutes a limited waiver of Defendant's sovereign immunity, provides that the federal government may be held liable "for injury or loss of property . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However, the FTCA contains a carveout that prohibits suit on any claim "based upon the exercise or performance or the failure to exercise or

perform a discretionary function or duty." 28 U.S.C. § 2680(a); *see generally Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021) (explaining the Ninth Circuit's jurisprudential framework for application of the discretionary function exception).

As noted above, Plaintiffs' lawsuit rests upon an assertion that Defendant failed to comply with its own regulations governing the maintenance of corner monuments. Plaintiffs cite to provisions from three documents: the Forest Service Manual, the Forest Service Handbook, and the Forest Service Land Surveying Guide. (Response at 1.) Although Plaintiffs rely on all three documents, they place primary emphasis on section 60.3(2) of the Handbook, which provides:

> Prior to any land, resource, or restoration management activities occurring within one-quarter mile of any National Forest System boundary line, all property corners, property controlling corners, Public Land Survey System corners, property lines, and special designated area boundary lines must be surveyed, located, monumented, marked, and maintained to Forest Service standards.

(Response at 4, 10, 11, 12.) Defendant argues that the discretionary function exception operates to bar Plaintiffs' lawsuit because the government retains discretion regarding the implementation of the various Forest Service policies cited by Plaintiffs, including the Handbook provision quoted above.

Defendant cites numerous cases in support of its proposition that none of the relevant Forest Service policies are mandatory for purposes of FTCA liability and that the implementation of the cited policies constitutes a quintessential discretionary function requiring policy-based balancing of the government's scarce resources. However, even if the implementation of the relevant Forest Service policies is a discretionary function, the Court is not convinced that the existence of this discretion would preclude Plaintiff's lawsuit. In all of the cases cited by Defendant in which a court held that the implementation of a policy involved a discretionary function for purposes of FTCA liability, the policy at issue was explicitly directed towards health and safety.[1] Here, in contrast, none of the

---

[1] *ARA Leisure Servs. v. United States*, 831 F.2d 193, 195 (9th Cir. 1987) ("We agree with the Court of Appeals for the Eighth Circuit that '[w]here the challenged governmental

- 4 -

relevant Forest Service policies concern the welfare of a visitor's health, safety, or property. Indeed, the absence of a nexus between the relevant Forest Service policies and the mitigation of danger is a central pillar of Defendant's MSJ, which argues in great detail that the Forest Service policies at issue here "serve[] a specific social purpose: to protect federal land interests—not to protect recreational users like Plaintiffs." (MSJ at 7.) According to Defendant, "Routine land surveying is not designed to protect a 'public safety' interest as Plaintiffs claim. Nor is the guidance written to protect recreational users or their cars from survey markers." (MSJ at 7.) "Rather it is written to prevent the expansion of adjoining private land onto public property." (MSJ at 7.)

        The Court agrees that the Forest Service policies at issue here do not pertain to the welfare of the general public's safety or personal property. For instance, the "objective" of section 60 of the Forest Service Handbook, which is the section most heavily relied on by

---

activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees.'" (quoting *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir.1986))); *Autery v. United States*, 992 F.2d 1523, 1525 (11th Cir. 1993) ("The saving and safeguarding of human life takes precedence over all other park management activities, whether the life is of the visitor, concessioner, or park employee. . . . Pursuant to this directive, the unwritten policy at GSMNP at the time of the accident was to make every reasonable effort within the constraints of budget, manpower, and equipment available to detect, document, remove, and prevent tree hazards." (citations omitted)); *Childers v. United States*, 40 F.3d 973, 974 (9th Cir. 1994) ("In addition, the Yellowstone Ranger Operating Procedure requires park personnel to weigh public access against visitor safety, and the Loss Control Management Program commits the NPS to providing a reasonably safe environment while, at the same time, protecting resources and processes which may be dangerous."); *Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995) ("While the said policy guidelines certainly outline general policy goals regarding visitor safety, the means by which NPS employees meet these goals necessarily involves an exercise of discretion."); *Blackburn v. United States*, 100 F.3d 1426, 1431 (9th Cir. 1996) ("The NPS Loss Control Management System for Yosemite National Park states that it is park policy to identify hazards in the park environment to protect park visitors from accident or illness."); *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998) ("The Millers specifically point to language in the plan which requires employees to . . . (2) apply aggressive suppression action to wildfires that threaten assets, including private property, by initial attack . . . ."); *Navarette v. United States*, 500 F.3d 914, 916 (9th Cir. 2007) ("He cites 36 C.F.R § 327.1 (1997), which requires the Army Corps to manage the resources entrusted to it so as to 'provid[e] the public with safe and healthful recreational opportunities while protecting and enhancing these resources,' and the Army Corps' Engineering Manual 1110-1-400, which lists as a 'Guiding Principle' 'maintaining health, safety, security and comfort of the customers in all aspects.'"); *Terbush v. United States*, 516 F.3d 1125, 1137 (9th Cir. 2008) ("The first chapter of NPS-50 states that the program objectives of the NPS's Safety and Occupational Health Program include '[p]roviding for the safety and health of the public (visitors) from recognized hazards in NPS operations, on NPS lands, and in NPS facilities[].'").

Plaintiffs, is "[t]o survey, mark, post, and maintain legally defensible National Forest System property lines, special designated area boundary lines and to define the titled interests of the United States of America." (Doc. 91-4 at 16.) Plaintiffs effectively concede that the relevant Forest Service policies are not safety regulations and were not adopted for the purpose of protecting visitors' personal property. (*See* Response at 8 ("So, although the Corner Monument markings aren't expressly for the safety of the public, they also directly serve the public safety.").)

Given that the relevant Forest Service regulations are unrelated to the protection of personal health and property, Defendant's invocation of the discretionary function exception rests on a legal theory that is materially different from the reasoning in the caselaw adduced. Defendant urges that the existence of governmental discretion in a discrete factual sphere precludes tort liability in cases arising out of both that factual background and also *all other* factual contexts. This strikes the Court as a tenuous proposition. According to Defendant's own briefing, the Forest Service policies at issue here have nothing to do with the mitigation of danger and the protection of Plaintiffs' property was not a factor that the Forest Service considered in discretionarily implementing its surveying policies. It therefore would seem odd if the exercise of discretion inherent in implementing those policies operated to preclude personal injury claims. "The basis for the discretionary function exception was Congress' [sic] desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). The Court is skeptical that the discretion contained in a substantively cabined set of policies can vitiate the FTCA's waiver of sovereign immunity in cases unconnected with the subject matter of the relevant policies. Were that the law, the exception would seem to swallow the rule. To be sure, a substantively unrelated policy may defeat a claim where a plaintiff rests his claim on that policy. Thus, in this case, Plaintiffs cannot successfully assert a claim based on negligence *per se*. But that conclusion

flows from a substantive analysis of the merits of a claim; it does not turn upon an initial assessment of sovereign immunity or the FTCA's waiver thereof. Thus, the Court is not convinced that the Forest Service policies at issue here categorically bar a claim based on common law negligence.

### B. The Recreational Use Statute

Under Arizona's recreational use statute, a landowner is "not liable to a recreational user" for the condition of premises unless the landowner "was guilty of wilful [sic], malicious or grossly negligent conduct." A.R.S. § 33-1551(A). A "recreational user" is a person who, for either no fee or only a nominal fee, is granted permission to enter premises in order to, *inter alia*, "hike" or "engage in other outdoor recreational pursuits." A.R.S. § 33-1551(G)(5). "[F]ailing to maintain or keep in place any sign, other form of warning or any modification made to improve safety does not create liability . . . if there is no other basis for that liability." A.R.S. § 33-1551(B). It is undisputed that Plaintiffs were recreational users. (*See* Doc. 91-7 at 3.) Therefore, because liability exists under the FTCA only to the extent that such liability exists under "the law of the place where the act or omission occurred," *see* 28 U.S.C. § 1346(b)(1), Defendant is statutorily insulated from liability unless Plaintiffs can establish that Defendant's conduct rose to the level of gross negligence. Plaintiffs cannot so establish.

Gross negligence occurs when a party knows or should know (1) that its conduct creates an unreasonable risk of injury and (2) that this unreasonable risk involves a high probability that substantial harm will occur. *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 595 (Ct. App. 1991).[2] "Gross negligence differs from ordinary negligence in quality

---

[2] In most Arizona cases, including *Walls*, courts have written that gross negligence must involve an unreasonable risk of "bodily harm." *See Walls*, 170 Ariz. at 595. Some Arizona cases remove the "bodily harm" language from the rule statement, but most of these cases still involve bodily harm. *See, e.g.*, *Armenta v. City of Casa Grande*, 205 Ariz. 367, 369 ¶ 3, 372–73 ¶ 20 (Ct. App. 2003). However, the Arizona Court of Appeals has at least entertained the idea that gross negligence may occur in the absence of bodily harm. *See Carstens v. City of Phoenix*, 206 Ariz. 123, 129 ¶ 28 (Ct. App. 2003) ("Thus, in a case where an inspector's gross negligence leads to personal injury *or property damage*, the inspector would be liable in tort and those tort-based damages would be recoverable." (emphasis added)). This discussion is academic, however, as Defendant has not raised the absence of bodily harm as a defense in this case. Because Defendant does not argue this issue, the Court does not address it further.

1   and not degree." *Id.* "Wanton negligence is highly potent, and when it is present it fairly
2   proclaims itself in no uncertain terms. It is 'in the air,' so to speak. It is flagrant and evinces
3   a lawless and destructive spirit." *Id.* (quoting *Scott v. Scott*, 75 Ariz. 116, 122 (1953)).
4   Crucially, governmental non-compliance with regulations, even safety regulations, does
5   not establish gross negligence. *Warfield v. City of Tucson*, No. 2 CA-CV 2013-0130, 2014
6   WL 580176, at *4 ¶ 13 (Ariz. Ct. App. Feb. 12, 2014). Although the violation of a safety
7   regulation may constitute negligence *per se*, it does not demonstrate gross negligence. *Id.*

8   Here, Plaintiffs' lawsuit rests upon a failure-to-warn theory predicated almost
9   entirely upon Defendant's alleged non-compliance with its internal policies regarding the
10  marking of corner monuments. Such non-compliance is insufficient to overcome the
11  legislative limitation on premises liability enshrined in the recreational use statute. And
12  once Plaintiffs' non-compliance theory is set aside, the remainder of their argument does
13  not satisfy either requirement of Arizona's gross negligence standard. Plaintiffs essentially
14  concede that there is no evidence that Defendant possessed actual knowledge of the corner
15  monument's existence or the risks posed thereby. (*See* Response at 5 ("It notes that the
16  Corner Monument was last inspected and documented on June 8, 1963, 61 years ago.");
17  Response at 7 (stating that Defendant "fail[ed] to locate" the corner monument, "should
18  have . . . known" about the corner monument, and maybe "didn't even know it was there").)
19  To be sure, Plaintiffs repeatedly question whether Defendant knew of the corner
20  monument's existence. (*See, e.g.*, Response at 13.) Although positing a plausible theory of
21  knowledge may be sufficient to survive a motion to dismiss, that theory becomes
22  unavailing at summary judgment when it is both wholly unsupported by evidence and even
23  affirmatively contradicted by some evidence.

24  Nor is there any evidence that Defendant ought to have known about the corner
25  monument. Defendant bore no duty to search the hundreds of millions of acres of Forest
26  Service land in an effort to uncover overgrown corner monuments. Plaintiffs point to
27  surveying and land-demarcation policies ostensibly requiring Defendant to locate corner
28  monuments in the vicinity of new construction, which allegedly occurred around the

Forestglen Trailhead. But, once again, non-compliance with this regulation is immaterial in the analysis of gross negligence. *See Warfield*, 2014 WL 580176, at *4 ¶ 13. And except for the internal Forest Service regulations, Plaintiffs have identified no duty borne by Defendant to locate and mark hidden corner monuments that it lacks knowledge of. Generalized knowledge of a generic possibility of injury is also insufficient to establish gross negligence. *Id.* at *5 ¶¶ 18–19 (holding that the recreational use statute precluded liability in a slip-and-fall case even though "the City knew the irrigation system as a whole often required repairs yet still kept the Zoo open to the public"). The knowledge giving rise to gross negligence must be particularized to the harm subsequently suffered. *Id.* ("Although the Zoo's employees said they were aware that occasionally sprinkler overspray would wet the stairwell, that fact does not demonstrate the employees knew or should have known that a shrubbery root would rupture the irrigation pipe, causing water to leak onto the stairwell."); *see also Armenta*, 205 Ariz. at 369 ¶ 3 (holding that the recreational use statute precluded liability because "[a]lthough Sullivan testified that he could anticipate that children might climb on the goals, he had never seen anyone do so, nor had he heard a report of anyone doing so, much less a report of previous injuries sustained by a child engaging in that activity."). Thus, absent impermissible reliance on Defendant's alleged non-compliance with certain Forest Service policies, Plaintiffs have adduced no evidence that Defendant knew or should have known that its conduct created an unreasonable risk of injury.

Moreover, Plaintiffs have also failed to present evidence satisfying the second requirement of the test for gross negligence, namely that the unreasonable risk created by the objectionable conduct involved a high probability that substantial harm would occur. The Court cannot accept the proposition that the risk of minor vehicle damage incurred in a low-speed collision in a parking lot is the kind of "substantial harm" that the Arizona legislature had in mind when it passed the recreational use statute. As the Arizona judiciary has held time and again, "[g]ross negligence differs from ordinary negligence in quality and not degree." *See Walls*, 170 Ariz. at 595. This case presents minor property damage of

an exceedingly ordinary nature. And this is not a case where a party got lucky and inflicted less harm than its conduct reasonably risked. On the contrary, the damage to Plaintiffs' vehicle appears commensurate with the risk posed by an obscured metal pipe protruding from the ground near a parking lot. In other words, this case is precisely the kind of case from which the Arizona legislature sought to immunize public landowners who make their premises available for public recreation. Accordingly, summary judgment is appropriate.

The Court has read Plaintiffs' Motion to Supplement Discovery. Nothing therein materially affects the Court's analysis or disposition. Therefore, the Court will simply grant that motion and deny Defendant's Motion to Strike as moot.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Strike Plaintiffs' Reply to Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment. (Doc. 101.)

**IT IS FURTHER ORDERED** granting Plaintiffs' Motion to Supplement Discovery. (Doc. 102.)

**IT IS FURTHER ORDERED** denying Defendant's Motion to Strike Plaintiffs' Motion to Supplement Discovery. (Doc. 103.)

**IT IS FURTHER ORDERED** granting Defendant's Motion for Summary Judgment. (Doc. 90.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant and close this case.

Dated this 22nd day of November, 2024.

Honorable John J. Tuchi
United States District Judge